UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────x
ERNEST RODRIGUEZ,                 :
                                  :         OPINION AND
          Plaintiff,              :         ORDER
                                  :
     v.                           :         10-CV-8965 (ER)
                                  :
ATRIA SENIOR LIVING GROUP, INC.,  :
                                  :
          Defendant.              :
─────────────────────────────────x

RAMOS, D.J.:

          Plaintiff Ernest Rodriguez filed this action against his former employer Atria

Senior Living Group.  His Complaint alleges causes of action under the Americans with

Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA).  He now moves

for partial summary judgment on eight claims: one claim that Atria failed to reasonably

accommodate his disability under the ADA; one claim that Atria terminated him in

retaliation for engaging in an ADA-protected activity; and, six claims that Atria

interfered with his rights under the FMLA.

          The Court agrees with Mr. Rodriguez that there are no genuine disputes of

material fact on all issues except two of his six FMLA claims.  But the Court holds that

Atria, not Mr. Rodriguez, is entitled to summary judgment on the ADA reasonable

accommodation claim, the ADA retaliation claim, and four of the six FMLA claims.  The

Court, therefore, DENIES Mr. Rodriguez's motion for partial summary judgment in its

entirety and GRANTS summary judgment to Atria on each of the issues except for two of

the FMLA claims.

## I. BACKGROUND

### A. Facts

Atria Senior Living Group hired Ernest Rodriguez as a Maintenance Technician on April 8, 2008.  Pl.'s Rule 56.1 Statement ¶¶ 4, 5.  In early 2009, he suffered a shoulder injury that was not related to his work for Atria.  Pl.'s Rule 56.1 Statement ¶ 7.  Because of the injury, he applied for leave under the FMLA in February or March of that year.  *Id.*  Atria denied his request on the ground that he was not yet eligible for FMLA leave as he had not yet worked with the company for one year.  Def.'s Rule 56.1 Statement ¶ 7, 10.  However, he was granted a general leave of absence that started on March 18, 2009, the date he underwent surgery on his shoulder.  Pl.'s Rule 56.1 Statement ¶ 8; Affirmation of Greg Riolo in Opposition to Motion for Summary Judgment ("Riolo Aff."), Ex. A.  While on leave, on April 6, he became eligible for two "employee referral bonuses" of $100 each.  Pl.'s Rule 56.1 Statement ¶ 11.

On April 8, 2009, while still on leave, Mr. Rodriguez reached one year of service with Atria, and, as a result, he became eligible for FMLA leave.  *See id.* ¶ 13.  He therefore re-applied for FMLA leave and met with Atria's human resources director Jo-Ann Reilly in order to sign an acknowledgement that his general leave of absence had been converted into FMLA leave.  *Id.* ¶ 14, 15.  The Parties dispute whether, while at the office, Mr. Rodriguez was also asked to attend and attended an employee meeting.  *See* Def.'s Rule 56.1 Statement ¶ 18; *see also* Pl.'s Mem. at 11.  Mr. Rodriguez's FMLA leave started effective that day, April 8, 2009 (the "First FMLA Leave.")

The First FMLA Leave ended on June 22, 2009 when Mr. Rodriguez returned to work.  Pl.'s Rule 56.1 Statement ¶¶ 24.  His physician had signed a note on June 11,

authorizing his return to work with "no restrictions."  Riolo Aff. Ex. H.  Nevertheless,

Mr. Rodriguez requested to be put on light duty.  Pl.'s Rule 56.1 Statement ¶ 26.  The

Parties dispute how Atria responded to his request.  According to Mr. Rodriguez, Ms.

Reilly "made no effort to engage [him] in an interactive process to evaluate his request

for light duty."  *Id.* ¶ 27.  According to Atria, Ms. Reilly instructed him to submit another

note from a physician confirming his physical limitations, but he never did so.  Affidavit

of Jo-Ann Reilly in Opposition to Motion for Summary Judgment ("Reilly Aff.") ¶¶ 9-10.

  The Parties also dispute what happened when Mr. Rodriguez raised this issue with

his direct supervisor, Maintenance Director Luis Carasquillo.  Mr. Rodriguez claims that

Mr. Carasquillo told him that he had "to be 100%" to return to work at Atria.  Pl.'s Rule

56.1 Statement ¶ 28.  Mr. Carasquillo, however, stated in his deposition that he did not

remember saying that.  *See* Carasquillo Dep. at 95.  Atria Executive Director Diana

Singer denied that Atria had such a policy.  Singer Dep. at 124-25.

  Atria also claims that, on the day Mr. Rodriguez returned to work, June 22, 2009,

he received the employee referral bonuses he was owed.  *See* Def.'s Rule 56.1 Statement

¶ 21; Riolo Aff. Ex. H.  Mr. Rodriguez does not dispute that statement.  *See also* Pl.'s

Rule 56.1 Statement ¶ 21 (stating only that he did not receive the bonuses *during* the First

FMLA Leave).

  On October 22, 2009, Mr. Rodriguez was injured at work while attempting to lift

a soda machine.  Pl.'s Rule 56.1 Statement ¶ 32.  He claims that, before the injury, he had

complained to Mr. Carasquillo about being assigned to lift the machine and that Mr.

Carasquillo threatened to take disciplinary action if he did not complete the task.  *Id.* ¶

31.  For his part, Mr. Carasquillo denied that Mr. Rodriguez had complained about

moving the soda machine and noted that he assigned Mr. Rodriguez's co-worker Carl Johnson to help with the lifting.  Def.'s Rule 56.1 Statement ¶ 31.

After the injury, Mr. Rodriguez was examined by a physician who recommended that he undergo a second surgery.  *See* Pl.'s Rule 56.1 Statement ¶ 33-34.  The next day, October 23, 2009, Mr. Rodriguez started a second period of FMLA leave (the "Second FMLA Leave").  *Id.* ¶ 41.

Mr. Rodriguez's Second FMLA Leave ran concurrently with his workers' compensation leave.  *Id.* ¶ 42; Def.'s Rule 56.1 Statement ¶ 42.  The Parties dispute whether he was given notice that they would run concurrently.  *Id.* ¶ 43; Def.'s Rule 56.1 Statement ¶ 43.

In late October, during the Second FMLA Leave, Mr. Rodriguez alleges that he and some co-workers met with Ms. Reilly to request that the co-workers be allowed to donate some of their paid time off to him, as permitted by company policy, but she denied the request.  Pl.'s Rule 56.1 Statement ¶ 50.  Atria denies this.  Def.'s Rule 56.1 Statement ¶ 50.  Ms. Reilly claims that she explained the process by which paid time off could be donated, but that neither Mr. Rodriguez nor his co-workers ever submitted the necessary forms.  *See* Reilly Aff. ¶¶ 14-21.

Mr. Rodriguez exhausted the Second FMLA Leave on November 6, 2009. Okoronkwo Aff., Ex. 3.  He claims that, on November 10, 2009, he met with Ms. Reilly to request six to seven weeks of additional leave.  *Id.* ¶ 57.  Atria claims instead that in that November 10 meeting with Ms. Reilly, Mr. Rodriguez requested a three month leave of absence.  Def.'s Rule 56.1 Statement ¶ 57.  The Parties agree that Atria authorized a

one-month general leave of absence that was to follow the Second FMLA Leave and to expire on December 7, 2009.  Okoronkwo Aff. Ex. 3.

On November, 10, 2009, Atria mailed a letter to Mr. Rodriguez, stating: "You are responsible for paying the [employee] portion of your benefits while on leave. . . . Premium payments are due the same time they would be if made by payroll deductions. If payments are not made timely, benefits may be canceled."  Declaration of Chinyere Okoronkwo in Opposition to Motion for Summary Judgment ("Okoronkwo Aff.") Ex. 17. Instructions on how to send in benefits were attached to the letter.  *See id.*  The Parties agree that Atria mistakenly sent this letter to the wrong address because Mr. Rodriguez had moved and that he never received it.  *See* Pl.'s Rule 56.1 Statement ¶ 58; Def.'s Rule 56.1 Statement ¶ 58; Singer Dep. at 92 (reading her handwritten note on the envelope of the November 10, 2009 letter stating "Not delivered and returned unopened, as employee has moved.").  However, the letter was not returned as undeliverable until December. Def.'s Rule 56.1 Statement ¶ 58.  Mr. Rodriguez alleges that, as a result, while still on leave, his insurance coverage lapsed because his share of his monthly health insurance premium was not paid.  *See* Pl.'s Mem. at 14; *see also* Pl.'s Rule 56.1 Statement ¶ 67. Atria disputes this.  *See* Def.'s Rule 56.1 Statement ¶ 59 (Atria "denies that Plaintiff's coverage lapsed.").

Atria terminated Mr. Rodriguez on December 16, 2009.  *Id.*[1]  Atria Executive Director Diane Sawyer sent him a termination letter that day, explaining that "[a]s stated per your doctor's note, you are not able to return to work at this time," but that "once

---

[1] Mr. Rodriguez misstates this date as December 16, 2010.  Pl.'s Rule 56.1 Statement ¶ 68.  Atria did not catch the misstatement.  Def.'s Rule 56.1 Statement ¶ 68.

your doctor clears you to return to work, you may reapply for any open position that you are qualified to perform."  *Id.*

### B. Procedural History

On April 5, 2010, Mr. Rodriguez filed a complaint with the Equal Employment Opportunity Commission.  Okoronkwo Aff. Ex. 4.  The EEOC determined it would not pursue Mr. Rodriguez's claim and, on September 2, 2010, issued him a right to sue letter. *Id.*

On November 30, 2010, Mr. Rodriguez filed the instant Complaint.  His Complaint purports to raise two causes of action.  First, he alleges that Atria interfered with his rights under the FMLA in two ways: (1) "by under-credit[ing] the matching contributions that it was obligated to deposit into [his] 401(k) account" during the First FMLA Leave; and, (2) by "refus[ing] to remit workers' compensation benefits to" him during the Second FMLA Leave.  Compl. ¶ 13, 14.  Mr. Rodriguez raises neither of these FMLA interference claims in his motion for partial summary judgment.

Second, Mr. Rodriguez claims that Atria retaliated against him under the ADA. But the retaliation he alleges in the Complaint is not what one might expect.  He alleges that Atria received a written copy of his EEOC charge on May 6, 2010.  *Id.* ¶ 18.  It was then, he alleges, that "Atria commenced to retaliate against [him]."  *Id.* ¶ 19.  The only purported retaliation he relies on after that point is that Atria failed to respond to his written demand for "a copy of the 401(k) summary plan description and a remediation of the apparent shortfall in 401(k) matching contributions."  *Id.* ¶ 20.  Again, Mr. Rodriguez does not raise these claims in the motion presently before the Court.

After discovery was completed, on December 30, 2011, Mr. Rodriguez filed for partial summary judgment.  In his memorandum supporting his motion, he offers three bases for summary judgment.  In one instance, concerning the reasonable accommodation claim, it appears from Mr. Rodriguez's motion papers that he means to raise as an additional cause of action an allegation that he mentions in the "Factual Allegations" section of his Complaint.  The balance of the factual bases for his motion appear *nowhere* in the Complaint.[2]

First, he contends that "Defendant is liable to Plaintiff under the ADA due to its one-hundred percent healed policy"—a claim that Atria failed to reasonably accommodate his disability under the ADA.  Pl.'s Mem at 2.  There is no reference to this claim in the causes of action listed in the Complaint.  In the facts section of his Complaint, however, he does allege that Atria failed to reasonably accommodate his disability by not allowing him to perform only "light duty" upon returning to work after the First FMLA Leave.  Compl. ¶ 8.  Accordingly, the Court will construe this part of Mr. Rodriguez's motion as a request for summary judgment on an ADA reasonable accommodation claim.

Second, he argues that "Defendant is liable to Plaintiff for ADA retaliation during the period November 10 to December 16, 2009."  Pl.'s Mem at 2.  This is nowhere alleged in the Complaint and, indeed, is a period *different from* the 2010 period of

---

[2] Mr. Rodriguez is represented by counsel and therefore is not owed the "special solicitude" afforded to *pro se* plaintiffs in this Circuit, but the Court will nevertheless, and with great reluctance, read his Complaint charitably.  He does include language in the causes of action in his Complaint in which he "reasserts and incorporates by reference the allegations set forth" in the "Factual Allegations" section of the Complaint. Compl. ¶ 12, 16.  Such a paragraph is usually intended to incorporate earlier factual allegations, not legal conclusions.  But the court will construe the Complaint to include these alleged additional causes of action. The Court's decision in this regard is premised, in part, on the fact that defense counsel, a law firm with vast experience in employment cases, chose to ignore these patent and obvious deficiencies in Plaintiff's moving papers.

retaliation alleged in the Complaint.  *See, e.g.*, Compl. ¶ 18-19 (alleging that Atria

"commenced to retaliate" against Mr. Rodriguez after May 6, 2010).  Mr. Rodriguez's

motion papers appear to suggest that what he means by this claim is that he was

terminated in retaliation for his ADA-protected activity.  *See, e.g.*, Pl.'s Mem at 2.  The

Complaint does mention that Mr. Rodriguez was terminated, *see* Complaint ¶ 11, and

does allege that "Atria's acts and omissions constitute an ongoing act of retaliation

against" Mr. Rodriguez, *see id.* ¶ 22, so the Court will construe this part of Mr.

Rodriguez's motion as a request for summary judgment on the ADA retaliation claim

based on his termination.

Third, the motion seeks summary judgment for Atria's alleged interference with

Mr. Rodriguez's rights under the FMLA during the two FMLA Leaves.  His motion

papers do not clearly demarcate his FMLA allegations into separate claims, but the Court

understands him to offer six potential bases for FMLA liability.  These six claims are also

nowhere alleged in the Complaint and are different from the two FMLA interference

claims actually alleged in the Complaint, but the Court will treat them as part of the more

general FMLA interference claim that was alleged in the Complaint.  *See id.* ¶ 15.


## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, a district court is

instructed not to "weigh evidence," but to "resolve all ambiguities and draw all inferences

in favor of the non-moving party" so as to ascertain "whether any reasonable trier of fact would have to conclude that the evidence was so strongly in the [movant's] favor that there remained no genuine issue of material fact for it to resolve." *Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir. 2011).

"In considering a motion for summary judgment," if the court determines "that there are no genuine issues of material fact, but that the law is on the side of the non-moving party, [the court] may grant summary judgment in favor of the non-moving party even though it has made no formal cross-motion." *Orix Credit Alliance, Inc. v. Horten*, 965 F. Supp. 481, 484 (S.D.N.Y. 1997); *see also Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) ("The prevailing view in this Circuit is that a court need not give notice of its intention to enter summary judgment against the moving party"); *Mattis v. Zheng*, No. 05 Civ. 29242 (DC), 2006 WL 3155843 at *3 (S.D.N.Y. Oct. 27, 2006) (approvingly quoting *Orix* in granting summary judgment to a non-moving party).

In such a case, "[n]otice to the moving party of the intention to grant summary judgment in favor of the non-moving party is not required; rather, the court must simply be satisfied that the moving party will not suffer any procedural prejudice resulting from an inadequate opportunity to fully present its case." *Id.* This is particularly so where, as here, the parties have had a full opportunity to brief the issues on which the court is granting summary judgment.

Mr. Rodriguez is the movant in this case, but because the Court ultimately grants summary judgment to Atria on all but two of the FMLA claims, the Court resolves all ambiguities and draws all inferences in favor of Mr. Rodriguez.

**B. ADA Reasonable Accommodation Claim**

The Americans with Disabilities Act prohibits discriminating against a person "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

The ADA defines "discrimination" to include, *inter alia*, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless . . . [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the . . . [employer's] business." *Id.* § 12112(b)(5)(A).

To prevail on a discrimination claim under the ADA based on an employer's failure to provide a reasonable accommodation, a plaintiff must prove four elements. *See Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir. 1995). First, "the employer is subject to the statute under which the claim is brought." *Id.* Second, the plaintiff "is an individual with a disability within the meaning of the statute in question." *Id.* Third, "that, with or without reasonable accommodation, [the plaintiff] could perform the essential functions of the job." *Id.* Fourth, "that the employer had notice of the plaintiff's disability and failed to provide such accommodation." *Id.*

Mr. Rodriguez argues that Atria failed to accommodate his request for light duty after his return from his first shoulder surgery because of what he calls Atria's "100% healed" policy. *See* Pl.'s Mem. at 5. He cites authorities for the proposition that employers cannot require employees to be cleared for work without restrictions before returning to work. *See id.*

For the purpose of this motion, Atria is neither contesting that it is an employer subject to the ADA nor that Mr. Rodriguez has a disability within the meaning of the ADA.  Def.'s Rule 56.1 Statement ¶¶ 2, 1.  Atria also cannot be disputing that Mr. Rodriguez could perform the essential functions of the job at the time of his return from his first surgery because its position is that Mr. Rodriguez was able to work without restrictions at that time.  *See, e.g.*, Def.'s Mem. at 5.  The disagreement between the Parties, thus, is whether Atria was aware that Mr. Rodriguez had a disability that Atria was required under law to accommodate.

Mr. Rodriguez emphasizes what he calls Atria's "100% healed policy," which he claims is a per se violation of the ADA.[3]  *See, e.g.*, Pl.'s Reply Mem. at 1.  Mr. Carasquillo stated in his deposition that he did not remember saying that Atria had a 100% healed policy, *see* Carasquillo Dep. at 95, and Ms. Singer affirmatively denied that Atria had such a policy.  Singer Dep. at 124-25.

If the relevant question for the motion were whether Atria had a 100% healed policy, there would be a genuine dispute of material fact.  But that issue is irrelevant on the facts of this case.  Whether or not Atria had such a policy, Mr. Rodriguez was cleared for work without restrictions.  Both Mr. Rodriguez's initial and reply memoranda ignore the critical fact that his own physician authorized him to return to work with "no restrictions."  *See* Riolo Aff. Ex. H; Pl.'s Mem. at 3-6; Pl.'s Reply Mem. at 1-4.  His physician's letter supports Ms. Reilly's statement in her deposition that she told Mr. Rodriguez to submit "another note from a doctor that stated his physical limitations and

---

[3] The case law supports Mr. Rodriguez on this point.  *See, e.g., Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012) ("Since a '100% healed' policy prevents individual assessment, it necessarily operates to exclude disabled people that are qualified to work, which constitutes a per se violation [of the ADA].").  This authority does not help Mr. Rodriguez because, as explained below, his physician cleared him to work with no restrictions.

that he had restrictions."  Reilly Aff. ¶ 9.  There is no evidence in the record that Mr. Rodriguez ever did so.

Even when the evidence is construed in the light most favorable to Mr. Rodriguez, he still cannot state a plausible reasonable accommodation claim.  Atria was within its rights to rely on Mr. Rodriguez's physician's statement that he was cleared for work without the weight restrictions he requested.  *See, e.g., Young v. Westchester Cnty. Dept. of Soc. Serv.*, 57 Fed. App'x. 492, 494 (2d Cir. 2003) (explaining that an employer "was not on notice that it was obligated to comply with the ADA's requirements" when physicians' notes indicated no accommodation would be necessary); *see also Harvey v. America's Collectibles Network, Inc.*, No. 09-cv-523, 2011 WL 182864 (E.D. Tenn. Jan. 20, 2011) ("An employer need not accept an employee's word that the employee has an illness that may require accommodation and the employer instead may attempt to confirm or disprove the employee's representation, such as by requiring that the employee provide medical documentation sufficient to prove that he has a condition that needs accommodation.").

So, even assuming that Mr. Rodriguez did request light duty, Atria did not violate the ADA by relying on the opinion of a medical professional—in this case Mr. Rodriguez's personal physician—about what accommodation his injury required or by insisting that he provide proof of the need for the requested accommodation.

Because Atria did not fail to reasonably accommodate Mr. Rodriguez's disability, the Court DENIES Mr. Rodriguez's motion for summary judgment on this claim and GRANTS summary judgment to Atria on the same.

### C. ADA Retaliation Claim

The ADA provides that "[n]o person shall discriminate against any individual because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

"To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (quotation omitted).

Mr. Rodriguez claims that he engaged in an ADA-protected activity by "request[ing] an extension of his [Second FMLA Leave], so as to accommodate the December 2009 surgery and post-operative rehabilitation." Pl.'s Mem at 7. The retaliation he now alleges is his termination. *See id.* His Complaint, of course, relies solely on another allegation of retaliation related to his EEOC charge, but Mr. Rodriguez is not seeking summary judgment on that claim. *Compare* Compl. ¶ 19 *with* Pl.'s Mem at 6-7.

Requesting a reasonable accommodation of a disability is an ADA-protected activity. *See Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002). This is true even if the plaintiff's claim that he was entitled to a reasonable accommodation is mistaken, so long as it was made in good faith. *Conley v. United Parcel Service*, 88 F.Supp.2d 16, 20 (E.D.N.Y. 2000). There can also be no doubt that

13

Atria was aware of Mr. Rodriguez's protected activity because Ms. Reilly acknowledges that he made the request for additional leave, even though she disputes how long a period of leave he requested. *See* Okoronkwo Aff. Ex. 3. Of course, there is no dispute that termination is an adverse employment action.

But there is no evidence that Mr. Rodriguez's request for additional leave *caused* the termination. The timeline of events indicates that Atria had a plausible, non-discriminatory reason to terminate Mr. Rodriguez. He was injured at work on October 22, 2009. Pl.'s Rule 56.1 Statement ¶ 32. He started his Second FMLA Leave the following day. *Id.* ¶ 41. He exhausted that leave on November 6, 2009. Okoronkwo Aff. Ex. 3. He was granted a one-month discretionary general leave of absence to follow the Second FMLA Leave, which expired on December 7, 2009. Okoronkwo Aff. Ex. 3. He was terminated on December 16, 2009, because his physician confirmed that he was not able to return to work at the end of his leave with or without an accommodation. *Id.* The expiration of the entirety of his FMLA and discretionary leaves was the cause both of his request for an extension and his termination.

Mr. Rodriguez offers no reason to believe that he was terminated for any reason other than Atria's stated, legitimate business reason for terminating him: that according to his physician he was unable to do his job with or without accommodation after depleting all of his leave.

His main argument is that the termination came only five weeks after the request for extension of leave, so the temporal proximity suggests causality. *See* Pl.'s Mem at 7. At a minimum, he argues that the temporal proximity is sufficient when coupled with the alleged lack of a legitimate business justification for his termination. *See id.*

The Second Circuit has held in an ADA retaliation case that, "while the temporal proximity between [the plaintiff's] termination and [protected activity] satisfies the causation element of [a] prima facie case, it is insufficient to create a question of fact as to whether [defendant's] proffered non-retaliatory rationale for terminating [plaintiff] was pretextual." *Ragusa v. Malverne Union Free School Dist.*, 381 F. App'x. 85, 89 (2d Cir. 2010). Here, Atria has shown a non-retaliatory rationale for his termination, and Mr. Rodriguez's reliance on the mere temporal proximity between his request for additional leave and his termination cannot create a material issue of fact about Atria's stated reason for terminating him.

Because Mr. Rodriguez has offered no plausible reason to doubt Atria's stated reason for terminating him, he cannot prevail on an ADA retaliation claim. Therefore, the Court DENIES his motion for summary judgment on this claim and GRANTS summary judgment to Atria on the same.

### D. FMLA Claims

As the Second Circuit has explained, "[t]he FMLA gives eligible employees an 'entitlement' to twelve workweeks per year of unpaid leave 'because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)). The statute requires that, "[f]or an employee to be eligible for FMLA leave, he must have (1) been employed for at least twelve months by the employer from whom he is requesting leave and (2) performed at least 1,250 hours of service with that employer in the twelve months prior to the beginning of his leave."

*Porter v. Donahoe*, No. 10–cv–1174, 2012 WL 1992217 at *1 (2d Cir. June 5, 2012)

(paraphrasing 29 U.S.C. § 2611).

The FMLA also provides eligible employees "a private right of action to seek

both equitable relief and money damages against any employer . . . should that employer

interfere with, restrain, or deny the exercise of FMLA rights." *Id.* (quotations omitted).

To succeed on an FMLA interference claim, a plaintiff must establish that the defendant

denied or otherwise interfered with a benefit to which he was entitled under the Act. *Id.*

at *1; *see also* 29 U.S.C. § 2615(a)(1).

The regulations that implement the FMLA specifically provide that, "[i]f the

employee is unable to perform an essential function of the position because of a physical

or mental condition, including the continuation of a serious health condition, the

employee has no right to restoration to another position under the FMLA." 29 C.F.R. §

825.214(b); *see also* 29 U.S.C. § 2614. The Second Circuit has reinforced this rule,

explaining that, although "[t]he FMLA provides that at the end of an employee's leave

the employee has the right to return to the position he held before the leave or its

equivalent . . . this right is not absolute." *Sista*, 445 F.3d at 174. In one FMLA case,

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999), the

Circuit held that "[t]he fact that [the plaintiff] was not restored to his position at the end

of that 12-week period did not infringe his FMLA rights because it is also undisputed that

at the end of that period he remained unable to perform the essential functions of his . . .

position."

The Parties do not dispute that Mr. Rodriguez was eligible for *and received* the

two FMLA Leaves. Nevertheless, Mr. Rodriguez brings six claims of FMLA

interference against Atria.  On four of the six claims, there are no disputed issues of material fact, and the Court grants summary judgment to Atria.  On two of the claims, assuming arguendo the claims have been properly presented in Plaintiff's Complaint, the facts are not sufficiently developed for the Court to resolve the issue at this stage of the litigation.

### 1. *Employee Referral Bonuses*

Mr. Rodriguez was owed two employee referral bonuses of $100 each as of April 6, 2009.  Pl.'s Rule 56.1 Statement ¶ 11.  As of that date, he was on general leave, which would be converted to FMLA leave two days later.  *Id.* ¶ 15.  He now claims that Atria interfered with his FMLA rights by not paying him the bonuses.

But Atria claims—and Mr. Rodriguez does not now dispute—that it did pay him the bonuses on the first day he returned to work, June 22, 2009. *See* Def.'s Rule 56.1 Statement ¶ 21; Riolo Aff. Ex. H; *see also* Pl.'s Rule 56.1 Statement ¶ 21 (stating only that he did not receive the bonuses during the First FMLA Leave).

Mr. Rodriguez relies for his argument on a subsection of the FMLA which provides that "[t]he taking of leave under [the FMLA] shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced."  29 U.S.C. § 2614(a)(2).  There is no dispute that Mr. Rodriguez did not *lose* any benefit; he simply received the bonuses when he returned to work.  Even assuming that the bonuses do count as a benefit to which he was entitled under the FMLA, he cannot point to any authority establishing that Atria interfered with his rights by granting him the benefit upon his return to work.

Therefore, Atria's withholding of his employee referral bonuses cannot support a claim for interference with his FMLA rights.  The Court DENIES summary judgment to Mr. Rodriguez on this claim and GRANTS summary judgment to Atria on the same.

   *2.  Day One of the First FMLA Leave (April 8, 2009)*

Mr. Rodriguez claims that his First FMLA Leave was "foreshortened" by a day, *see* Pl.'s Rule 56.1 Statement ¶ 18, or "interrupted," *see* Pl.'s Mem. at 11, on April 8, 2009, because he had to appear at work to meet with Ms. Reilly to sign an acknowledgement of the transition from his general leave of absence to FMLA Leave. *See* Def.'s Rule 56.1 Statement ¶ 18; *see also* Pl.'s Mem. at 11.  The Parties dispute whether he also attended a separate employee meeting on that day.  *See id*; Pl.'s Mem. at 11.

But, assuming that Mr. Rodriguez was required to attend the meeting, he cites to no authority to support his theory that being required to sign a form to commence FMLA Leave in person or attend an employee meeting would deny him a benefit to which he was entitled.  Perhaps more importantly, he cannot claim that he was not given his full twelve weeks of FMLA leave because he voluntarily chose to return to work on June 22, 2009, approximately two weeks before the twelve weeks had expired.  *See* Pl.'s Rule 56.1 Statement ¶¶ 24.  Nothing that Atria did on April 8, 2009, interfered with Mr. Rodriguez's FMLA rights to the full twelve weeks to which he was entitled.  The Court DENIES summary judgment to Mr. Rodriguez on this claim and GRANTS summary judgment to Atria on the same.

   3.   *Notice of Leave*

Mr. Rodriguez alleges that Atria violated the FMLA's notice requirements by not sending him a formal, written notice or notices that he was eligible for FMLA leave or that his general leave of absence was being converted into FMLA leave.  *See* Pl.'s Mem. at 11-12.  Exactly what notice Mr. Rodriguez believes he should have received is unclear. On January 22, 2009, he received and signed Atria's FMLA policy, which explained the eligibility requirements for FMLA leave as well as his rights under the FMLA.  Riolo Aff. Ex. F.  On March 18, 2009, the first day of his general leave of absence, he filled out and signed an application for the leave.  *Id.* Ex. A.  On April 8, 2009, the first day on which he was eligible for FMLA leave, he filled out and signed an application for FMLA leave.  *Id.* Ex. B.

Nevertheless, the Court will assume that Mr. Rodriguez was not given proper notice for purposes of this motion because whether he received notice or not is not material here.  The FMLA's notice requirements do not impose strict liability; instead, "[t]he purpose of the [FMLA interference] cause of action is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions."  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91 (2002); *see also Sarno*, 183 F.3d at 161 (affirming a dismissal of an FMLA interference claim because no "rational factfinder [would] conclude that [the employee's] exercise or attempted exercise of his FMLA rights was in any way affected by [the employer's] failure to inform him that the Act entitled him to a leave of up to 12 workweeks.").

Mr. Rodriguez does contend that the alleged lack of notice affected his substantive rights, but his contention is based on his argument that he was deprived of "the right to make an informed decision to exercise or to waive day one of the First FMLA Leave." Pl.'s Mem. at 12. In other words, he is saying that, had he been given better notice of his FMLA rights, he could have decided whether or not to come into work on April 8, 2009. This is an ironic argument given that the reason Mr. Rodriguez went to Atria that day was to meet with Atria's human resources director so that he could be given notice of his FMLA rights. Moreover, as explained above, Mr. Rodriguez voluntarily returned to work before the twelve weeks had expired. He did not, nor was he required to, "waive" anything. The Court DENIES summary judgment to Mr. Rodriguez on this claim and GRANTS summary judgment to Atria on the same.

### 4. *Payment of Health Insurance Premium*

Mr. Rodriguez alleges that his health insurance coverage lapsed in November 2009, during his Second FMLA Leave. *See id.* 14; *see also* Pl.'s Rule 56.1 Statement ¶ 67. Atria denies that his coverage lapsed. *See* Def.'s Rule 56.1 Statement ¶ 59 (Atria "denies that Plaintiff's coverage lapsed.").

Mr. Rodriguez offers two arguments for his claim that the alleged lapse in health insurance coverage constituted interference with his FMLA rights. His first argument is that Atria interfered with his FMLA rights by failing to pay *his* share of his health insurance premium for November 2009. Pl.'s Mem. at 14. Atria responds by admitting that it did not pay the *employee* share, but arguing that it had no obligation to do so. Def.'s Mem. at 10. Atria is right on this point.

Mr. Rodriguez contends that Atria violated 29 U.S.C.A. § 2614(c)(1), which provides that "during any period that an eligible employee takes [FMLA leave], the employer shall maintain coverage under any 'group health plan' . . . for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave." However, that section does not require Atria, or any other employer, to pay the *employee's* share of his health premium even if he had been continuously employed.

The Eleventh Circuit addressed a similar claim in *Lampley v. IMS Management Services, LLC*, 421 F. App'x. 932, 934 (11th Cir. 2011).  The employee plaintiff in that case "contend[ed] that [his employer's] cancellation of his health care coverage was prohibited interference with the exercise of his FMLA rights.  [The employer] respond[ed] that [the employee's] policy was cancelled because he failed to pay his share of the premiums."  *Id.*

Like Mr. Rodriguez, the employee in *Lampley* "admitted that he had failed to pay his premiums while on leave."  *Id.*  The Circuit reasoned that "[a]lthough [the employer] was obligated to maintain [his] health care coverage while he was on FMLA leave, its obligation only extended to maintaining that coverage under the same conditions that it would have had to had [he] not been on leave. Under either scenario, [the employee was obligated to pay his share of the premium, just as [the employer] was obligated to pay its share."  *Id.*  The Circuit upheld the district court's grant of summary judgment to the employer.  *Id.* at 935.

Mr. Rodriguez's second argument, however, is that, even if he was required to pay his share of the premiums, Atria failed to notify him of his obligation to directly

remit payment of his share, which had previously been deducted from his paychecks.  *See*

Pl.'s Mem. at 13-14.  Mr. Rodriguez signed Atria's FMLA Policy, which states in part:

> If an employee is a participant in the Company's group health plan when his or
> her FMLA leave commences, the Company shall continue paying its portion of
> the employee's health insurance premiums during the employee's FMLA leave
> period to the same extent and under the same circumstances as it would have
> made such payments in the absence of such leave.  The employee will, however,
> remain responsible for paying his or her portion of such premiums during the
> FMLA leave period.  *The Support and Benefits Department will notify eligible
> employees concerning the schedule and amount of any required premium
> payments.*  The employee's failure to pay his or her portion of such premiums
> during FMLA leave may result in his or her loss of health coverage.

Riolo Aff. Ex. H (emphasis added).  So under Atria's FMLA Policy, Mr. Rodriguez was

entitled to notice that he needed to make the health insurance premium payments during

FMLA leave.

Atria did *attempt* to send a letter to Mr. Rodriguez with notice.  It sent a letter on

November, 10, 2009, addressed to Mr. Rodriguez, stating: "You are responsible for

paying the [employee] portion of your benefits while on leave. . . . Premium payments

are due the same time they would be if made by payroll deductions.  If payments are not

made timely, benefits may be canceled."  Okoronkwo Aff. Ex. 17.  The letter also

provided instructions on how Mr. Rodriguez could make a direct payment.  *See id.*  But

the Parties agree that Atria sent this letter to the wrong address because Mr. Rodriguez

had moved and that he never received it.  *See* Pl.'s Rule 56.1 Statement ¶ 58; Def.'s Rule

56.1 Statement ¶ 58; Singer Dep. at 92.[4]

Therefore, Atria does not dispute that it failed to provide the notice that Mr.

Rodriguez needed to remit his health insurance premiums directly.  This fact, however,

only matters if it resulted in Mr. Rodriguez losing a benefit to which he was entitled.

---

[4] Curiously, Atria makes no mention of this letter in its moving papers, nor does it argue that it did comply
with its obligation and that the fault lay with Mr. Rodriguez for not providing his new address.

Atria disputes whether his health insurance coverage lapsed.  *See* Def.'s Rule 56.1

Statement ¶ 59.  Neither party has submitted evidence establishing whether or not the

coverage did lapse.

Because there is a genuine dispute over the material fact of whether Mr.

Rodriguez's health insurance coverage lapsed, the Court DENIES summary judgment to

Mr. Rodriguez on this claim.

### 5.   *Donation of Paid Time Off*

Mr. Rodriguez alleges that Atria denied his request for his co-workers to be

allowed to donate their paid time off to him.  Pl.'s Rule 56.1 Statement ¶ 50.  Ms. Reilly

alleged that she never denied the request, but that neither Mr. Rodriguez nor his co-

workers ever pursued the donation.  *See* Reilly Aff. ¶¶ 14-21.

This dispute of fact is not material to the legal issue.  As stated above, "[t]o

succeed on an FMLA interference claim, a plaintiff must establish that the defendant

denied or otherwise interfered with a benefit to which *he* was entitled under the Act."

*Porter*, 2012 WL 1992217 at *1 (emphasis added).  Under the FMLA, "[t]he term

'employment benefits' means all benefits provided or made available to employees by an

employer, including group life insurance, health insurance, disability insurance, sick

leave, annual leave, educational benefits, and pensions."  29 U.S.C. § 2611(5).

However, nothing in the FMLA entitles Mr. Rodriguez to receive donated paid

time off to which his co-workers were entitled; benefits owed to other employees are not

benefits for Mr. Rodriguez.  Nor has he cited any legal authority that would suggest an

entitlement to such donations.  So even if Mr. Rodriguez can establish that Atria deprived

him of the benefit of his co-worker's donations under a breach of contract or negligence

theory, it is not liable for interfering with his FMLA rights.  The Court DENIES summary judgment to Mr. Rodriguez on this claim and GRANTS summary judgment to Atria on the same.

      6.   *Notice of Concurrent Running of Workers' Compensation Leave*

Mr. Rodriguez argues that Atria interfered with his FMLA rights by failing to provide notice that the Second FMLA Leave would run concurrent with workers' compensation leave.  Def.'s Mem. at 15.  While the Parties agree that Mr. Rodriguez's Second FMLA Leave ran concurrently with his workers' compensation leave, *see* Pl.'s Rule 56.1 Statement ¶ 42; Def.'s Rule 56.1 Statement ¶ 42, they dispute whether he was given notice that they would run concurrently.  *Id.* ¶ 43; Def.'s Rule 56.1 Statement ¶ 43.

The regulations that implement the FMLA do provide that "[a]n employee may be on a workers' compensation absence due to an on-the-job injury or illness which also qualifies as a serious health condition under FMLA. The workers' compensation absence and FMLA leave may run concurrently (subject to proper notice and designation by the employer)."  29 CFR § 825.702(d)(2).

The relevant issue, though, is whether the alleged lack of notice impeded Mr. Rodriguez's exercise of his substantive rights.  *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. at 91; *Sarno*, 183 F.3d at 161.  Essentially, his argument is that Atria started the Second FMLA Leave prematurely—that he should have stayed on workers' compensation leave until it expired and only then been put on FMLA leave.  *See* Def.'s Reply Mem. at 9-10.[5]

---

[5] Mr. Rodriguez also offers the risible suggestion that he was entitled to "workers' compensation leave without maximum duration," Pl.'s Mem. at 15, but offers no support for this claim other than to note that Ms. Singer stated in her deposition she did not know what the maximum duration of workers' compensation was.  *See* Def's Rule 56.1 Statement ¶ 69.

It is not inconceivable based on the record before the Court that Mr. Rodriguez's leaves could have been structured differently so as to allow him more time off to recover. In *Downey v. Strain*, 510 F.3d 534, 542 (5th Cir. 2007), the Fifth Circuit upheld an FMLA verdict for an employee for which "the jury found that had [the employee] received proper notice, she would have restructured her leave in a way that allowed her to receive [her FMLA] entitlements." Drawing a comparison with *Downey*, the District of Columbia Circuit recently upheld summary judgment to an employer on an employee's claim that the company "interfered with her FMLA rights by belatedly notifying her that her FMLA leave and workers' compensation leave would run concurrently" on the ground that there was "no record evidence whatsoever that [the employee] could have structured her leave differently had she known the leave would be concurrent." *Dorsey v. Jacobson Holman, PLLC*, Nos. 11–7017, 11–7071, 2012 WL 1164228 at *1 (D.C. Cir. April 9, 2012).

The parties offer no discussion on the question of whether Mr. Rodriguez could have structured his leave differently so as to avoid termination. If Atria did, as he alleges, fail to notify him that his workers' compensation leave and FMLA leave were running concurrently, this issue could be dispositive. However, on this record, the Court cannot resolve the issue. The Court DENIES summary judgment to Mr. Rodriguez on this claim.

**CONCLUSION**

Resolving all ambiguities and drawing all inferences in favor of Mr. Rodriguez, the Court concludes that Atria is entitled to summary judgment on his ADA reasonable

accommodation claim, his ADA retaliation claim, and four of his six FMLA interference claims. The Court, therefore, DENIES Mr. Rodriguez's motion for partial summary judgment on these claims and GRANTS summary judgment to Atria on the same.

On Mr. Rodriguez's claims that Atria interfered with his FMLA rights by not notifying him of the need to directly remit his health insurance premiums and by not notifying him that his workers' compensation leave would run concurrently with his Second FMLA Leave, the Court is not able to grant summary judgment to either party at this stage of the litigation. The Court, therefore, DENIES Mr. Rodriguez's motion for partial summary judgment on these claims.

The Clerk of the Court is respectfully directed to terminate this motion (Doc. 18).

It is SO ORDERED.

Dated: August 13, 2012
White Plains, NY

Edgardo Ramos, U.S.D.J.